**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 3:23-cr-92 (VAB) |
| LUIS PEREZ AND BRIAN BAKER. | |

**RULING AND ORDER ON OMNIBUS MOTIONS**

Luis Perez and Brian Baker (each a "Defendant," and collectively, "Defendants") have been charged in a multi-count indictment charging them with crimes related to the possession and distribution of firearms, and, in Mr. Perez's case, controlled substances. *See* Indictment, ECF No. 17, (May 31, 2023) ("Indictment").

In advance of trial, the Defendants have filed motions to dismiss certain counts of the indictment and motions for a bill of particulars, as well as, for Mr. Perez, a motion to suppress, and for Mr. Baker, a motion to reconsider the Court's prior Order denying severance. *See* Mot. to Dismiss Count Seventeen, ECF No. 83 (Aug. 11, 2023); Mot. to Suppress, ECF No. 125 (Jun. 6, 2024); Mot. for Bill of Particulars, ECF No. 166 (Nov. 12, 2024); Mot. to Dismiss Vagueness and Constitutionality, ECF No. 167 (Nov. 12, 2024); Second Motion to Sever, ECF No. 168 (Nov. 12, 2024); Mot. to Dismiss Venue, ECF No. 169 (Nov. 12, 2024); Mot. for Bill of Particulars, ECF No. 183 (Dec. 16, 2024).

For the following reasons, the Defendants' motions are **DENIED**.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.  Factual Allegations

This case involves an alleged firearms trafficking conspiracy resulting in the indictment of five defendants, including Mr. Perez and Mr. Baker.

The Indictment charges Mr. Baker with shipping firearms from Kansas and Texas to Connecticut in violation of 18 U.S.C. §§ 933(a)(l), 933(a)(3), 933(b), 1715, and 2. *See* Indictment ¶¶ 1–4, 7–8, 14–15.  It also charges Mr. Perez with distributing firearms and narcotics in Connecticut in violation of 18 U.S.C. §§ 933(a)(l), 933(a)(3), and 933(b) and 21 U.S.C. §§ 841(a)(l), 841 (b)(1)(B)(ii), and 841(b)(l)(C), as well as charges related to firearm possession in violation of 18 U.S.C. § 922(g)(l) and 924(a)(2), 924( c )(1 )(A)(i). *See id.* ¶¶ 1–2, 4, 6, 8, 10, 12–13, 18–20.

On May 16, 2023, the Government submitted a Master Affidavit signed by FBI Special Agent Corbett Tomsovic seeking arrest warrants, criminal complaints, and search warrants, including a search warrant of Mr. Perez's residence. *See* Affidavit, 3:23-mj-467, ECF No. 1-1 ("Master Affidavit"). The Master Affidavit makes the following factual allegations:

Mr. Perez, Mr. Baker, and their co-defendants are alleged to be involved in "a gun trafficking organization . . . in and around Connecticut, Kansas, and California." Master Affidavit ¶ 26. Mr. Baker was allegedly "believed to order firearms from individuals, . . ., for resell outside Kansas, including to Connecticut" and was alleged to be "storing the firearms, firearm proceeds, or evidence of the [charged offenses] at his residence." *Id.* ¶ 32. Mr. Baker allegedly mailed firearms to a co-defendant, Algelly Diaz, who then stored the firearms "at a stash location in Hartford, Connecticut[.]" *Id.* ¶ 34; *see also id.* at ¶ 8 ("[L]aw enforcement believes DIAZ, who resides in Hartford, Connecticut, is receiving firearms shipped in the mail from California and Kansas at a stash location (Target Location-3) and that he is storing proceeds from the subsequent sales of the firearms at Target Location-3 and his residence (Target Location-2)." (emphasis removed)).

Mr. Perez allegedly would "obtain the firearms from [Mr. Diaz] at the Hartford-based stash location before selling the firearms to individuals throughout Connecticut on behalf of the [gun trafficking organization]." *Id.* ¶ 35. Mr. Perez is also alleged to be "distributing narcotics, and . . . using his vehicle (Target Vehicle), his residence (Target Location-1), and a laundry mat operated by his wife (Target Location-7) in connection to these [alleged] illegal activities." *Id.* ¶ 8 (emphasis removed).

In May 2023, investigators allegedly executed several controlled purchases where an FBI Confidential Human Source ("CHS") purchased firearms and narcotics from Mr. Perez. *Id.* ¶¶ 27–29. Before and after several of these controlled purchases, Mr. Perez was allegedly observed traveling from residence in his vehicle to meet CHS. *See id.* ¶ 158.

On May 3, 2023, Mr. Perez allegedly traveled in his vehicle to Mr. Diaz's residence, and afterwards he and Mr. Diaz allegedly traveled in their respective vehicles to the stash location. *Id.* ¶¶ 53–54. At the stash location, Mr. Perez allegedly collected two postal boxes, and then met CHS at a location in Naugatuck, Connecticut. *Id.* ¶¶ 54, 57. While there, CHS allegedly entered Mr. Perez's vehicle, where Mr. Perez delivered the packages, which allegedly were later determined to contain firearms, to CHS and showed CHS photos of more firearms on his phone. *Id.* ¶¶ 57–60.

On May 11, 2023, Mr. Perez allegedly left his residence in his vehicle and met with Mr. Diaz at the stash location. *Id.* ¶¶ 83–84. After entering the stash location, Mr. Perez allegedly placed a package into the trunk of his vehicle. *Id.* ¶ 84. Mr. Perez then allegedly delivered the package, which allegedly were later determined to contain firearms, to CHS at his wife's laundry mat. *Id.* ¶¶ 86–90. During their meeting the CHS allegedly informed Mr. Perez that he was a convicted felon. *Id.* ¶ 92.

On May 12, 2023, Mr. Perez allegedly left his residence in his vehicle and met with CHS at his wife's laundry mat, where he allegedly informed CHS that he had a significant quantity of cocaine and handguns in his vehicle "if he were to be robbed" at that time. *Id.* ¶¶ 102, 105. After receiving payment from CHS for both cocaine and firearms, Mr. Perez allegedly gave CHS a wrapped substance that allegedly was later determined to be cocaine. *Id.* ¶ 107. Mr. Perez then allegedly left the laundry mat and went to the stash location, where he left with a package that was allegedly later determined to contain firearms, that he then delivered to CHS at the laundry mat. *Id.* ¶¶ 109–14.

### B. Procedural History

On May 16, 2023, Mr. Perez was arrested in Connecticut, and, on May 19, 2023, Mr. Baker was arrested in Kansas on criminal complaints. *See* Sealed Complaint, 3:23-mj-467 (RMS), ECF No. 1; Sealed Complaint, 3:23-mj-481 (RMS), ECF Nos. 1, 8.

On May 31, 2023, a grand jury returned an indictment charging Mr. Baker, Mr. Perez, and three co-defendants with various counts related to an alleged firearms trafficking conspiracy. *See* Indictment.

On June 8, 2023, Mr. Perez appeared for an arraignment before U.S. Magistrate Judge Robert M. Spector, where he pled not guilty. *See* Min. Entry, ECF No. 41.

On June 28, 2023, Mr. Baker appeared for an arraignment before U.S. Magistrate Judge Maria E. Garcia, where he also pled not guilty. *See* Min. Entry, ECF No. 59.

On August 11, 2023, Mr. Perez filed a motion to dismiss Count Seventeen of the Indictment. Mot. to Dismiss Count Seventeen, ECF No. 83 ("Perez Mot. to Dismiss").

On August 25, 2023, the Government filed an opposition to the Mr. Perez's motion to dismiss Count Seventeen. Mem. In Opposition, ECF No. 85 ("Opp'n to Perez MTD").

On August 29, 2023, Mr. Perez submitted a notice of additional authority in support of his motion to dismiss Count Seventeen. Not. Of Additional Authority, ECF No. 87 ("Add'l Auth.").

On March 20, 2024, Mr. Baker filed a motion for severance and a speedy trial. First Mot for Severance and Speedy Trial, ECF No. 119 ("First Mot. to Sever"). In support of his motion for severance, Mr. Baker argued, among other things, that evidence of Mr. Perez's involvement in drug distribution, which Mr. Baker claims he was not involved in, caused a risk of prejudicial spillover.

On March 21, 2024, the Government submitted an opposition to Mr. Baker's motion for severance. Mem. In Opposition, ECF No. 120.

On June 6, 2024, Mr. Perez filed a motion to suppress the search of his residence. Mot. to Suppress, ECF No. 125; Mem. In Support re Mot. to Suppress, ECF No. 125-1 ("Mot. to Suppress").

On June 18, 2024, the Government filed an opposition to Mr. Perez's motion to suppress. Mem. In Opposition, ECF No. 128 ("Opp'n to Mot. to Suppress").

On June 24, 2024, the Court denied Mr. Baker's motion to sever and found that "Mr. Baker has not demonstrated that a joint trial would result in 'prejudice so substantial as to amount to a miscarriage of justice.'" Order, ECF No. 131 (quoting *U.S. v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988)).

On November 12, 2024, Mr. Baker filed a motion for a bill of particulars, two motions to dismiss several counts of the Indictment—one arguing for dismissal of certain counts based on improper venue, and the other arguing for dismissal of certain counts based on vagueness and unconstitutionality—and a second motion for severance. *See* Mot. for Bill of Particulars, ECF

No. 166 ("Baker Mot. for Bill of Particulars"); Mot. to Dismiss Vagueness and Constitutionality, ECF No. 167 ("Baker Mot. to Dismiss"); Second Motion to Sever, ECF No. 168 ("Second Mot. to Sever"); Mot. to Dismiss Venue, ECF No. 169 ("Mot. re Venue").

On December 16, 2024, Mr. Perez filed a reply in support of his motion to suppress. Reply, ECF No. 182 ("Reply re Mot. to Suppress").

On that same date, Mr. Perez filed a motion for a bill of particulars. Mot. for Bill of Particulars, ECF No. 183 ("Perez Mot. for Bill of Particulars").

On January 6, 2025, the Government filed a sur-reply in opposition to Mr. Perez's motion to suppress. Response/Reply, ECF No. 190 ("Sur-Reply re Mot. to Suppress").

On that same date, the Government filed a response to the Defendants' motions to dismiss and motions for a bill of particulars, and Mr. Baker's second motion to sever. Mem. In Opposition, ECF No. 191 ("Omnibus Opp'n").

On February 10, 2025, Mr. Perez submitted a reply in support of his motion for a bill of particulars. Reply to Response, ECF No. 212 ("Reply re Bill of Particulars").

## II.    STANDARD OF REVIEW

### A.  Motions to Dismiss

Federal Rule of Criminal Procedure 12(b) permits defendants to raise by pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1); *United States v. Sampson*, 898 F.3d 270, 278–79 (2d Cir. 2018). "The court must decide every pretrial motion before trial unless it finds good cause to defer a ruling." Fed. R. Crim. P. 12(d). "But when such a defense raises dispositive evidentiary questions, a district court must defer resolving those questions until trial." *Sampson*, 898 F.3d at 279 (internal quotation marks omitted).

### B. Motion for Bill of Particulars

Federal Rule of Criminal Procedure 7(f) provides that "[t]he court may direct the

government to file a bill of particulars . . . before or within 14 days after arraignment or at a later

time if the court permits." Rule 7(f) "permits a defendant to seek a bill of particulars in order to

identify with sufficient particularity the nature of the charge pending against him, thereby

enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double

jeopardy should he be prosecuted a second time for the same offense." *United States v.*

*Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

### C. Motion to Suppress

Under the exclusionary rule, evidence obtained illegally generally is not admissible at a

criminal trial. *See, e.g., United States v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994) (in the context of

a Fourth Amendment violation); *United States v. Anderson*, 929 F.2d 96, 98–99, 102 (2d Cir.

1991) (in the context of the voluntariness of a confession under the Fifth Amendment); *see also*

*Terry v. Ohio*, 392 U.S. 1, 12–13 (1968) (noting that the exclusionary rule maintains "judicial

integrity" and "has been recognized as a principal mode of discouraging lawless police conduct"

(internal quotation marks omitted)).

Before trial, a criminal defendant may move to suppress evidence that was obtained

illegally, including physical evidence that was seized in violation of the Fourth Amendment. *See*

Fed. R. Crim. P. 12(b)(3)(C). On "a motion to suppress physical evidence, the burden of proof is

initially on the defendant." *United States v. Breckenridge*, 400 F. Supp. 2d 434, 437 (D. Conn.

2005). "Once the defendant has established some factual basis for the motion, the burden shifts

to the government to show that the search was lawful." *Id*. "The standard of proof on the party

who carries the burden is a preponderance of the evidence." *Id.*; *see also United States v.*

*Echevarria*, 692 F. Supp. 2d 322, 332 (S.D.N.Y. 2010) ("On a motion to suppress evidence in a criminal trial, once [the defendant] has established a basis for his motion, the burden rests on the Government to prove, by a preponderance of the evidence, the legality of the actions of its officers." (alteration in original) (internal quotation marks omitted)).

### D.  Motion for Reconsideration

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" (internal citations omitted)). "[A] motion for reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

## III.  DISCUSSION

### A.  The Motions to Dismiss

Mr. Baker and Mr. Perez have filed motions to dismiss certain counts of the indictment, alleging that these counts are unconstitutional in light of the Supreme Court's holding in *New York Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), and, as for Mr. Baker, impermissibly vague or brought in the improper venue.

The Court will address each argument in turn.

### 1.  The Second Amendment Issue

The Second Amendment of the United States Constitution states that:

A well regulated Milita, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

Mr. Perez moves to dismiss Count Seventeen, which charges him with violating 18 U.S.C. § 922(g)(1) and 924(a)(8), because he alleges that Section 922(g)(1) violates the Second Amendment after the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Perez Mot. to Dismiss.[1] Relatedly, Mr. Baker moves to dismiss counts charging violations of 18 U.S.C. § 933 in part because he argues the right to buy and sell firearms is ancillary to Second Amendment rights. Baker Mot. to Dismiss at 11–13.

In response, the Government argues that "[o]ver two hundred courts across the country have heard challenges along these lines. Yet, all but a few courts have concluded that Section 922(g)(1) remains viable after the Supreme Court's decision in *Bruen*." Opp'n to Perez MTD. As to Mr. Baker's motion, the Government argues that "numerous district courts—considering motions to dismiss indictments based on *Bruen*—have concluded that the Second Amendment confers no right to sellers of firearms" and "as Section 933 (and the incorporated Section 932) prohibits the transfer of firearms to another, not the possession of firearms, the Second Amendment's protections are not infringed by the firearm trafficking charges against Baker." Omnibus Opp'n. at 17.

The Court agrees.

---

[1] In support of his motion, Mr. Perez submitted an opinion from the United States District Court for the Northern District of Oklahoma that he argues granted a motion to dismiss a Section 922(g)(1) charge because the Government failed to "meet its burden to show that the prior convictions listed in the Indictment support a §922(g)(1) charge 'consistent with the Nation's historical tradition." Add'l Auth. (quoting *United States v. Forbis*, 687 F. Supp. 3d 1170, 1178–79 (N.D. Okla. 2023), *adhered to on reconsideration*, No. 23-CR-00133-GKF, 2024 WL 3824642 (N.D. Okla. Aug. 14, 2024)). After the filing of this additional authority, however, the Tenth Circuit abrogated the district court's ruling in *Forbis* and reaffirmed its precedent finding that Section 922(g)(1) was constitutional. *Vincent v. Bondi*, 127 F.4th 1263, 1265–66 (10th Cir. 2025) (concluding that *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009), which "upheld the constitutionality of § 922(g)(1) for all individuals convicted of felonies[,]" "remains binding").

In *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013) (per curiam), the Second Circuit "join[ed] every other circuit to consider the issue in affirming that § 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons." *Id*. at 281–82. In doing so, the Second Circuit stated that even in the "recent Supreme Court opinions developing a more expansive interpretation" of the Second Amendment, the Supreme Court emphasized that those recent developments "should not 'be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" *Id*. at 281 (citing *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010)).

In *Bruen*, the Supreme Court rejected the approach then used to analyze Second Amendment challenges, means-end scrutiny, and held that: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. at 24; *see also id.* at 19–24. "The *Bruen* majority . . . [however] repeatedly referred to the Second Amendment's protections as extending to 'law-abiding' citizens—*not* felons." *United States v. Dancy*, 744 F. Supp. 3d 165, 168 (D. Conn. 2024) (citing *Bruen*, 597 U.S. at 9, 15, 26, 29–31, 38, 60, 70–71) (emphasis in original).

"Although the Second Circuit's decision in *Bogle* preceded the Supreme Court's decision in *Bruen*, numerous courts have concluded that the *Bruen* did not abrogate or overrule *Bogle*." *United States v. Lane*, No. 5:22-CR-132, 2023 WL 5614798, at *6 (D. Vt. Aug. 24, 2023) (collecting cases); *see also Dancy*, 744 F. Supp. 3d at 168 n.2 (collecting cases); *United States v. Carter*, No. 3:23-CR-00074, 2024 WL 3785366, at *5 (D. Conn. Aug. 13, 2024); *United States v. Gary*, No. 3:22-CR-116 (SRU), 2024 WL 4025287, at *2 (D. Conn. Sept. 3, 2024); *United*

*States v. Gumbs*, No. 3:23-CR-62-2 (OAW), 2024 WL 4433413, at *3 (D. Conn. Oct. 7, 2024); *United States v. Sturdivant*, No. 3:24-CR-65 (SRU), 2025 WL 42538, at *1 (D. Conn. Jan. 7, 2025).

First, "*Bogle* did not employ the 'means-end' test for scrutinizing gun regulations that *Bruen* specifically overturned." *United States v. Golston*, No. 23-CR-362 (AT), 2024 WL 149603, at *5 (S.D.N.Y. Jan. 12, 2024) (citation omitted); *see also United States v. Fayton*, No. 1:23-CR-00001 (JLR), 2023 WL 8275924, at *4 (S.D.N.Y. Nov. 30, 2023) ("Significantly, *Bogle* did not employ the means-end scrutiny disapproved by *Bruen*. This is in contrast to other circuits that did rely on means-end scrutiny in their pre-*Bruen* decisions upholding the constitutionality of Section 922(g)(1).").

Second, in *Bogle*, the Second Circuit directly relied on *Heller* and *McDonald* and their assurances of the constitutionality of "longstanding prohibitions on the possession of firearms by felons." *Bogle*, 717 F. 3d 281 (quoting *Heller*, 554 U.S. at 626). Neither *Heller* nor *McDonald* were disturbed by the Supreme Court's decision in *Bruen*. Indeed, *Bruen* reaffirmed both cases and the principle "that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 597 U.S. at 8–9; *see also United States v. Craft*, No. 23-CR-00178 (PMH), 2023 WL 6215326, at *3 (S.D.N.Y. Sept. 25, 2023) ("*Bogle* remains controlling precedent in this Circuit, given that it relied on *Heller* and *McDonald*, cases that were later reaffirmed by *Bruen*."); *United States v. Barnes*, No. 22-CR-43 (JPO), 2023 WL 2268129, at *1 (S.D.N.Y. Feb. 28, 2023) ("Throughout the *Bruen* opinion, the Court made clear that the concept of self-defense framed in *Heller*, *McDonald*, and *Bruen* applies to 'ordinary, law-abiding citizens.' . . . For its part, the Second Circuit has upheld § 922(g)(1) in light of *Heller* and *McDonald*. Because *Bruen* did not disturb either of those two

precedents, the Second Circuit's holding in *Bogle* continues to govern this issue." (citing *Bogle*, 717 F.3d at 281–82)). Thus, *Bruen* did not abrogate *Bogle. See, e.g., Fayton*, 2023 WL 8275924, at *5 ("[N]othing in *Bruen* is conflicting, incompatible, or inconsistent with anything in *Bogle*.").

As a result, Section 922(g)(1) continues to be constitutional under *Bogle*, and thus is not unconstitutional on its face. *See Sturdivant*, 2025 WL 42538, at *3 ("Perhaps the Second Circuit will, in the future, reevaluate its decision in *Bogle*. . . . In the meantime, this Court remains bound under *Bogle* to hold that section 922(g)(1) is constitutional, and it is therefore unnecessary to engage in the historical analysis that *Bruen* commands to ascertain whether felon-in-possession laws unconstitutionally restrict individuals' right to bear arms."). In addition, while Mr. Perez argues that he brings an "as-applied" challenge, Perez Mot. to Dismiss at 3, "he points to no particular facts to support the argument that section 922(g)(1) is unconstitutional as applied to him." *Sturdivant*, 2025 WL 42538, at *4.

For similar reasons, Mr. Baker's challenge to the constitutionality of Section 933, which prohibits selling firearms to individuals who the seller "knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony," 18 U.S.C. § 933(a)(1), also fails. As discussed above, case law—including that which Mr. Baker cites in his motion—is clear that "nothing in [the Supreme Court's] opinion [in *Heller*] should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms[, and] . . . [n]othing in the Court's more recent decision in *New York State Rifle & Pistol Association v. Bruen* casts doubt on that understanding of the Second Amendment's scope." *Gazzola v. Hochul*, 88 F.4th 186, 195 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2659 (2024) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008)). As a result, Section 933, which prohibits selling firearms to individuals who the seller knows or has reason to know may

12

not lawfully possess a firearm, does not "have the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms." *Gazzola*, 88 F.4th at 196.

In addition, while Mr. Baker cites to *Rehaif v. United States*, 588 U.S. 225 (2019), for the proposition that "it isn't that clear as to who may or may not be 'felons' under interpretation based on *Bruen* or *Rahif*," that decision did not call into question whether Section 922(g) was constitutional under the Second Amendment, but merely clarified the legal standard for proving someone guilty of unlawful possession of a firearm under Section 922(g). *Rehaif*, 588 U.S. 225 at 237 ("We conclude that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm.").

Accordingly, because Section 922(g)(1) is constitutional both facially and as-applied to Mr. Perez, and Section 933 is constitutional under the Second Amendment, the motions to dismiss brought by both Mr. Perez and Mr. Baker on these bases will be denied.

### 2. The Void-for-Vagueness Issue

"Due process requires that a criminal statute 'give fair warning of the conduct that it makes a crime.'" *United States v. Velastegui*, 199 F.3d 590, 593 (2d Cir. 1999) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 350–51 (1964)). The void-for-vagueness doctrine is one of the "related manifestations of the fair warning requirement." *United States v. Lanier*, 520 U.S. 259, 266 (1997). This doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The Second Circuit "ha[s] held that when 'the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only ... in light of the specific

facts of the case at hand and not with regard to the statute's facial validity.'" *United States v. Venturella*, 391 F.3d 120, 134 (2d Cir. 2004) (quoting *United States v. Rybicki*, 354 F.3d 124, 129 (2d Cir. 2003) (*en banc*), *cert denied* 543 U.S. 809 (2004)). As a result, "[o]ne whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness." *Id.* (quoting *Rybicki*, 354 F.3d at 129).

Mr. Baker argues that Section 933 is "void-for-vagueness" because there is "an extraordinarily broad range of laws" under which the buyer's possession of a gun may be a felony and thereby expose a seller to criminal liability. Baker Mot. to Dismiss at 6–7. He further argues that, "the government, under conspiracy, will allege that the original buyer is responsible for the second, third, fourth, etc., buyer of the gun who may be involved in illegal conduct making the original seller criminally liable" and "in this case Mr. Baker has no idea as to the existence of Mr. Perez let alone his status under the law but he is still held criminally liable under the statute." *Id.* at 7. Finally, he argues that in light of *Bruen* and *Rehaif*, "[t]he circuits are hopelessly split on what type of law to apply" to gun laws. *Id.* at 8–10.

In response, the Government argues that "Section 933 as enacted by Congress bars individuals from engaging in specific acts (shipping, transporting, transferring, causing to be transported, or otherwise disposing of) pertaining to specific items (firearms that have moved in interstate or foreign commerce) with specific knowledge (reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a Federal or State felony)," and "Congress clearly defined what is prohibited under Section 933." Omnibus Opp'n. at 10 (emphasis in original).

The Court agrees.

Because Mr. Baker does not bring a First Amendment challenge to the validity of Section 933, he must demonstrate that his alleged conduct is not clearly proscribed under the statute. Section 933(a)(1) makes it "unlawful for any person to ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person in or otherwise affecting interstate or foreign commerce, if such person knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony (as defined in section 932(a))." 18 U.S. Code § 933(a)(1). Section 932(a) defines a "felony" as "any offense under Federal or State law punishable by imprisonment for a term exceeding 1 year." 18 U.S. Code § 932(a)(3).

Here, Mr. Baker is alleged to have, among other things, "ship[ped] . . . firearm[s]" in the mail to Mr. Diaz, and to "know[] or ha[ve] reasonable cause to believe" that Mr. Diaz's possession of a firearm would constitute a felony, given that Mr. Diaz had previous felony convictions making it unlawful for him to possess a firearm under Section 922(g)(1). *See* Indictment ¶ 3, 7, 14. As a result, Mr. Baker's as-applied challenge fails because the plain language of the statute provides "sufficiently clear standards to minimize the risk of arbitrary enforcement" with "meaningful guidelines" and "objective criteria" to notify Mr. Baker that his conduct would subject him to criminal liability.[2] *See Thibodeau v. Portuondo*, 486 F.3d 61, 67–68 (2d Cir. 2007).

---

[2] To the extent that Mr. Baker argues that because he "has no idea as to the existence of Mr. Perez let alone his status under the law," Baker Mot. to Dismiss at 7, the statute is unconstitutionally vague as-applied to him, this argument is unavailing. While Mr. Baker may present this argument to a jury, whether Mr. Baker "knows or has reasonable cause to believe" that Mr. Perez or other co-defendants were felons who could not lawfully possess a firearm is among the clearly specified "objective criteria" that the Government must prove beyond a reasonable doubt to establish that Mr. Baker violated Section 933. *See F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253, (2012) ("[A] regulation is not vague because it may at times be difficult to prove an incriminating fact but rather because it is unclear as to what fact must be proved." (citation omitted)). Thus, his alleged lack of knowledge goes to whether the Government can prove this element of the statute and does not render the statute unconstitutionally vague.

In addition, as discussed in the previous section, Mr. Baker's argument that after *Bruen* and *Rehaif,* he would be unable to discern whether a potential buyer may not be lawfully able to possess a firearm is unavailing. As discussed above, the decision in *Rehaif* clarified the legal standard for proving someone guilty of unlawful possession of a firearm under Section 922(g). *Rehaif*, 588 U.S. 225 at 237. Section 922(g)—like Section 933 and 932—clearly defines specific categories of individuals who would not be able to possess a firearm lawfully, including individuals with felony convictions. *See* 18 U.S.C. § 922(g).

Furthermore, consistent with the analysis above, the Supreme Court and courts in this Circuit—along with several others—have denied challenges to the constitutionality of certain provisions of Section 922(g) after *Bruen*. *United States v. Rahimi*, 602 U.S. 680, 700 (2024) ("[W]e have no trouble concluding that Section 922(g)(8) survives Rahimi's facial challenge. Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others."); *United States v. Hunt*, 123 F.4th 697, 702 (4th Cir. 2024) ("[W]e conclude that neither *Bruen* nor *Rahimi* abrogates this Court's precedent foreclosing as-applied challenges to Section 922(g)(1) and those decisions thus remain binding. Second—and in the alternative—we conclude that Section 922(g)(1) would pass constitutional muster even if we were unconstrained by circuit precedent."); *Vincent v. Bondi*, 127 F.4th 1263, 1265–66 (10th Cir. 2025) (concluding precedent upholding Section 922(g)(1) remains binding after *Bruen*); *United States v. Jackson*, 110 F.4th 1120, 1129 (8th Cir. 2024) ("Consistent with the Supreme Court's assurances that recent decisions on the Second Amendment cast no doubt on the constitutionality of laws prohibiting the possession of firearms by felons, we conclude that [Section 922(g)(1)] is constitutional as applied to Jackson."); *United States v. Langston*, 110 F.4th 408 (1st Cir. 2024) (denying as-applied challenge to Section 922(g)(1)); *cf. Garland v.*

*Range*, 144 S. Ct. 2706, 2707 (2024) (vacating Third Circuit's opinion questioning the continued

constitutionality of Section 922(g)(1) after *Bruen* "for further consideration in light of

[*Rahimi*]"). Thus, buyers and sellers of firearms can be aware that individuals with prior felony

convictions—such as Mr. Baker's co-conspirators—are unable to lawfully possess firearms.

Neither *Bruen* nor *Rehaif* suggest that there is potential for confusion regarding who may

lawfully possess firearms that would cause Section 933 to be impermissibly vague as applied to

Mr. Baker. This is particularly true here considering that the Indictment and Master Affidavit not

only specify the prior felony convictions of Mr. Baker and his co-defendants that would make it

unlawful under Section 922(g) for him and his alleged co-conspirators to possess firearms but

also Connecticut laws forbidding the possession of certain firearms allegedly trafficked as part of

the conspiracy. *See* Indictment ¶ 17, 18; Master Affidavit ¶¶ 27, 28, 32–35, 120–21.

Accordingly, Section 933 is not unconstitutionally vague as applied to Mr. Baker and Mr.

Baker's motion to dismiss on this basis will be denied.

### 3.  The Venue Issue

Under Federal Rule of Criminal Procedure 18, "[u]nless a statute or these rules permit

otherwise, the government must prosecute an offense in a district where the offense was

committed." Fed. R. Crim. P. 18; *see also United States v. Lange*, 834 F.3d 58, 68 (2d Cir. 2016)

("A defendant in a criminal case has the right to be tried in the district where the crime was

'committed.'" (citing U.S. Const. amend. VI)). "Venue may lie in more than one place if 'the

acts constituting the crime and the nature of the crime charged implicate more than one

location.'" *Lange*, 834 F.3d at 68–69 (quoting *United States v. Reed,* 773 F.2d 477, 480, 483 n.4

(2d Cir. 1985)); *see also* 18 U.S.C. § 3237 ("[A]ny offense against the United States begun in

one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.").

"The government bears the burden of proving venue" by a preponderance of the evidence. *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011). "[W]hen a defendant is charged in more than one count, venue must be proper with respect to each count." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989) (citations omitted).

Mr. Baker argues that venue in Connecticut is improper for Counts Three, Seven, and Fourteen, which charge him with mailing nonmailable firearms in violation of 18 U.S.C. § 1715. He argues that the relevant act in Section 1715 is the "depositing" of firearms in the mail, and because this is alleged to have occurred in either Kansas or Texas, venue is improper in Connecticut. Mot. re Venue at 13.

In response, the Government argues that venue is proper because "18 U.S.C. § 3237(a) expressly provides that any offenses involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States 'is a continuing offense' and may be prosecuted 'in any district from, through, or into which such commerce, mail matter, or imported object or person moves.'" Omnibus Opp'n at 8. The Government further argues that even if Congress had not specified that venue was proper in Section 3237, "the third clause of Section 1751, . . , prohibits knowingly causing 'to be delivered by mail to the District of Connecticut according to the directions thereon.'" *Id.* at 8–9.

The Court agrees.

"[T]he '*locus delicti* of the charged offense must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279, (1999) (citing *United States v. Cabrales,* 524 U.S. 1, 6–7 (1998)).

"In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts. *Rodriguez-Moreno*, 526 U.S. 275 at 279. "In so doing, [courts] look at 'the key verbs which define the criminal offense in the statute[.]'" *United States v. Brennan*, 183 F.3d 139, 145 (2d Cir. 1999) (quoting *United States v. Chestnut*, 533 F.2d 40, 46-47 (2nd Cir.1976)).

Here, Section 1715 states:

> Whoever knowingly deposits for mailing or delivery, or knowingly causes to be delivered by mail according to the direction thereon, or at any place to which it is directed to be delivered by the person to whom it is addressed, any pistol, revolver, or firearm declared nonmailable by this section, shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. § 1715.

While Mr. Baker argues that "[a] clear reading of this statute is that the act in question, the illegality, is the act of mailing the package[,]" and "the end location is irrelevant," Mot. re Venue at 13, this statute criminalizes both the act of "deposit[ing] for mailing or delivery," which implicates the place where the firearm is sent in the mail, and "knowingly caus[ing]" the firearm "to be delivered by mail," which concerns the place where the firearm is delivered. 18 U.S.C. § 1715. *Cf. Rodriguez-Moreno*, 526 U.S. at 281-282 ("Section 924(c) criminalized a defendant's use of a firearm 'during and in relation to' a crime of violence; in doing so, Congress proscribed both the use of the firearm *and* the commission of acts that constitute a violent crime. It does not matter that [the defendant] used the .357 magnum revolver . . . only in Maryland because he did so 'during and in relation to' a kidnaping that began in Texas and continued in New York, New Jersey, and Maryland . . . . Where venue is appropriate for the underlying crime of violence, so too it is for the § 924(c)(1) offense. As the kidnaping was properly tried in New Jersey, the § 924(c)(1) offense could be tried there as well." (emphasis in original)). Thus,

because Mr. Baker is charged with "knowingly causing" nonmailable firearms "to be delivered by mail" to Connecticut, venue is proper in Connecticut.[3]

Accordingly, Mr. Baker's motion to dismiss on this basis will be denied.

## B. The Motions for a Bill of Particulars

"A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (internal quotation marks omitted). A bill of particulars is not necessary, however, "where the government has made sufficient disclosures concerning its evidence and witnesses by other means." *Id.* "The defendant bears the burden of showing that the information requested is necessary and that he will be prejudiced without it so as to justify granting a bill of particulars." *United States v. Ferguson*, 478 F. Supp. 2d 220, 226 (D. Conn. 2007). "Whether to grant a bill of particulars rests within the sound discretion of the district court." *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984).

### 1. The Sufficiency of the Alleged Violations of 18 U.S.C. § 933

Mr. Perez and Mr. Baker are charged in Counts One, Two, Four, Five, Seven, Nine, Eleven, and Thirteen with violations of 18 U.S.C. § 933, which states, in part:

(a) It shall be unlawful for any person to—

(1) ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person in or otherwise affecting interstate or foreign commerce, if such person knows or has reasonable cause to believe that the use, carrying, or

---

[3] In addition, as the Government observes, Congress has further clarified in 18 U.S.C. § 3237 that for offenses "involving the use of the mails" venue is proper "in any district from, through, or into which such commerce, mail matter, or imported object or person moves." *See* 18 U.S.C. § 3237. While the Second Circuit has interpreted the scope of Section 3237 narrowly in the context of mail fraud under 18 U.S.C. § 1341, *see Brennan*, 183 F.3d at 147 (holding that a defendant is not subject "to prosecution in any district through which a mail truck carrying his mail happened to" travel through), it has recognized that "prosecution under the mail fraud statute is permissible . . . in those districts. . . in which the defendant . . . 'knowingly causes' mail 'to be delivered.'" *Brennan*, 183 F.3d at 147; *see also United States v. Louissaint*, No. 12-CR-6081W, 2016 WL 3145145, at *7 (W.D.N.Y. June 3, 2016) ("[T]he holding of *Brennan* affirms that venue lies in those districts in which the defendant 'knowingly causes [mail] to be delivered by ... such carrier according to the direction thereon' for the purpose of executing a scheme to defraud.").

possession of a firearm by the recipient would constitute a felony (as defined in section 932(a));

(2) receive from another person any firearm in or otherwise affecting interstate or foreign commerce, if the recipient knows or has reasonable cause to believe that such receipt would constitute a felony; or

(3) attempt or conspire to commit the conduct described in paragraph (1) or (2).

18 U.S.C. § 933(a).

Mr. Baker argues that "[a]fter the Supreme Court decision in *Bruen* and *Rehaif v. United States*, 588 U.S. 225, 139 S.Ct. 2191 204 L.Ed.2d 594 (2019) what is felonious actions or felonies in relation to gun possession has become subject to varied rulings[,]" and "[t]he indictment is silent on what is considered a felony." Baker Mot. for Bill of Particulars at 12–13.

Similarly, Mr. Perez argues that "there are too many different ways in which the Government could attempt to establish the defendant's culpability on the firearms trafficking counts" such as whether the Government intends to show that Mr. Perez knew the firearms would be used in a felony, or whether he knew that the recipient was prohibited from possessing a firearm. Perez Mot. for Bill of Particulars at 4–5.

In response, the Government states that it "has produced to the defendants a detailed, lengthy Master Affidavit . . ., which provides a substantial outline of much of the evidence against them" such as "stat[ing] that the '[t]he Del-Ton DT1-15 is illegal to purchase or possess in Connecticut under Connecticut General Statutes § 53-202b(a)(1),'" and that "everyone (aside from the original firearm purchasers) were felons, making their possession of the firearms during the transactions unlawful." Omnibus Opp'n at 20–21 (quoting Master Affidavit ¶ 11). The Government further states that it "anticipates producing its anticipated exhibits distilled from the discovery in advance of jury selection to allow time for review prior to the start of evidence[,]"

21

and "also anticipates producing its Jencks disclosures prior to jury selection, which again, will provide further insight into its case-in-chief well in advance of the start of evidence." *Id.* at 22.

The Court agrees.

"The function of a bill of particulars is to provide defendant with information about the details of the charge against him if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at the trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (citation and internal quotation marks omitted), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010). Here, the indictment explicitly states the prior felony convictions of certain co-Defendants, and thus explains the basis for how their receipt of such firearms would constitute a felony. Indictment ¶ 17, 18.

In addition, the Master Affidavit likewise details each co-Defendant's felony convictions, *see* Master Affidavit ¶¶ 32–35, and specifies that possession of certain of the firearms allegedly involved in the conspiracy "is a Class C felony under state law." *Id.* ¶¶ 27, 28. In fact, the Master Affidavit has a section entitled "Knew or Had Reasonable Cause to Believe that Use, Carrying, Possession, and/or Receipt Would Constitute a Felony" that details the specific acts that Mr. Perez engaged in that constitute this element of the offense. *Id.* ¶¶ 116–122. As a result, Mr. Baker and Mr. Perez fail to show that they lack sufficient detail to prepare their defense and avoid surprise at trial. *See Ferguson*, 478 F. Supp. 2d at 226 ("Given the degree of detail in the indictment and the government's provision of searchable discovery databases and a list of its key documents, the defendants have not proven that they require more particularization to adequately prepare their defenses, avoid prejudicial surprise at trial, and protect against future double jeopardy.").

Moreover, to the extent Mr. Baker suggests that certain firearm possession statutes may be unconstitutional, as discussed above, in the absence of controlling case law indicating otherwise, the Court presumes that *Bruen* has not disturbed the continued validity of Section 922(g)(1). *See Dancy*, 744 F. Supp. 3d at 168 ("*Bogle*'s holding remains binding upon this Court and section 922(g)(1) is constitutional on its face and as applied to Defendant.")

Accordingly, Mr. Baker's and Mr. Perez's motions for a bill of particulars as to Counts alleging violations of 18 U.S.C. § 933 will be denied.

### 2. The Sufficiency of the Conspiracy Allegations

Mr. Perez also seeks a bill of particulars specifying the following details of his alleged role in the conspiracy referenced in Count One:

- The date on which Mr. Perez allegedly joined the conspiracy, and the manner in which he joined the conspiracy (by what overt act did he join the conspiracy);
- The names of all person who were allegedly members of the conspiracy, and the dates that the other members allegedly joined the conspiracy;
- A complete list of overt acts that the government alleges Mr. Perez committed in furtherance of the conspiracy;
- A complete list of individuals who were present during the commission of the alleged overt acts, and whether any individual present was acting for the Government;
- The dates, times, and locations of any meetings or conversations between Mr. Perez and his alleged co-conspirators in furtherance of the conspiracy.
- The number of firearms that the conspiracy is alleged to have transferred in violation of the statute

Perez Mot. for Bill of Particulars at 3.

In response, the Government argues that Count One of the Indictment "identifies members of the conspiracy, including codefendants" and "includes the dates of the alleged conspiracy, defines the nature of the conspiracy as one to ship, transport, transfer, cause to be transported, and otherwise dispose of one or more firearms to another person in and affecting interstate commerce, knowing and having reasonable cause to believe that the use, carrying and

possession a firearm by the recipient would constitute a felony, and describes the location of the conspiracy as the District of Connecticut and elsewhere." Omnibus Opp'n at 19–20. The Government argues that "[s]uch allegations are more than sufficient to provide sufficient notice to the defendants regarding the charges against them." *Id*. at 20.

In his reply, Mr. Perez argues that "[t]he Government should be required to identify all members of the conspiracy, indicted or unindicted, so that Mr. Perez has ample time to conduct any necessary investigation in advance of trial" and "[t]he Master Affidavit details engagement between Mr. Perez and one of the co-conspirators in May 2023, even though the Indictment charges him with a conspiracy dating back to October 2022. . . [and] [n]either the Master Affidavit nor the discovery produced to date adequately establishes a connection between Mr. Perez and many of the co-defendants charged in Count one." Reply re Bill of Particulars at 2. He further argues that "the information requested is consistent with bills of particulars ordered in other cases." *Id.* at 2 (citing *United States v. Feola*, 651 F. Supp. 1068, 1134 (S.D.N.Y. 1987)).

The Court disagrees.

"As a general rule, the defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial properly." *Feola*, 651 F. Supp. at 1132, *aff'd*, 875 F.2d 857 (2d Cir. 1989), *cert. denied*, 493 U.S. 834 (1989)). "It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts." *Id.* (citing *United States v. Carroll,* 510 F.2d 507, 509 (2d Cir.1975), *cert. denied,* 426 U.S. 923 (1976)). "Details as to how and when the conspiracy was formed, or when each participant entered it, need not be revealed before trial." *Feola*, 651 F. Supp. at 1132 (collecting cases); *see also United States v. Young & Rubicam, Inc.*, 741 F. Supp. 334, 349 (D. Conn. 1990) ("To require

specification of the 'formation of the conspiracy, the place and date of each defendant's entrance into the conspiracy, the substance or a copy of the conspiracy, and specification of the manner in which the conspiracy operated would unduly restrict the government's proof at trial.'" (quoting *United States v. McCarthy*, 292 F. Supp. 937, 940 (S.D.N.Y. 1968))). In addition, "[c]ourts have been highly reluctant to require a bill of particulars when defendants have asked for specific identities of co-conspirators or others allegedly involved." *United States v. Coffey*, 361 F. Supp. 2d 102, 122 (E.D.N.Y. 2005); *United States v. Wilson*, 493 F. Supp. 2d 364, 372 (E.D.N.Y. 2006) ("[I]dentifying alleged co-conspirators in a bill of particulars is inappropriate in cases where the defendant is charged with 'extreme acts of violence' in order to protect the government's investigation and the safety of unindicted co-conspirators.").

Considering these standards and the detail set forth in the Indictment and Master Affidavit, a bill of particulars is not necessary for the information Mr. Perez requests about the alleged conspiracy, such as when Mr. Perez and alleged co-conspirators joined the conspiracy or detailed account of the exact overt acts that he is alleged to have committed. *See United States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (denying request for bill of particulars setting for the "the 'whens' 'wheres' and 'with whoms' of acts and participation in the charged conspiracy" and noting "disclosure of all the overt acts in furtherance of the conspiracy . . . is not properly the function of a bill of particulars"). While Mr. Perez argues that, "[a]t a minimum, this Court should require a bill of particulars that details (1) the identities of all persons whom the government claims to have been co-conspirators during the course of the alleged conspiracy, regardless of whether they have been indicted; (2) whether any such co-conspirator is in federal, state, or protective custody; and (3) the number of firearms attributable to each individual defendant," Reply re Bill of Particulars at 2–3, he fails to show why this information is necessary

for his defense, in light of the detailed allegations in the Indictment and Master Affidavit concerning the individuals involved in the conspiracy and the firearms allegedly trafficked as part of that conspiracy. *See Ferguson*, 478 F. Supp. 2d at 226 ("The defendant bears the burden of showing that the information requested is necessary and that he will be prejudiced without it so as to justify granting a bill of particulars.").

Accordingly, Mr. Perez's motion for a bill of particulars will be denied.

### C. The Motion to Suppress[4]

The Fourth Amendment prohibits "unreasonable searches and seizures" and requires that "no Warrants shall issue, but upon probable cause, supported by Oath[.]" U.S. Const. amend. IV. "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). In evaluating a search warrant application "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.

Once a search warrant has issued, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 238–39 (alteration in original); *see also United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993)

---

[4] "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005) (internal quotation marks omitted). A hearing is unnecessary, however, when the defendant's moving papers "did not state sufficient facts which, if proven, would have required the granting of the relief requested." *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969); *see also Watson*, 404 F.3d at 167 (holding that an evidentiary hearing was not required when the defendant "failed to show that he could challenge the search under the Fourth Amendment, even assuming we credited the facts asserted in his counsel's affirmation."). While Mr. Perez has requested an evidentiary hearing, for the reasons discussed herein, he has not established the need for an evidentiary hearing.

("A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists.").

Mr. Perez argues that "the magistrate judge lacked sufficient probable cause for the issuance of a search warrant for Perez's residence" because the Master Affidavit "contains no facts to support an inference that evidence of criminal activity would be found at Perez's residence." Mot. to Suppress at 8. Mr. Perez argues that the Master Affidavit "specifically states that the firearms and the proceeds of the sales are kept and stored at the stash location, and that narcotics were located in [Mr.] Perez's vehicle" rather than his residence. *Id.* at 9.

In response, the Government argues that Mr. Perez "overlooks a key nexus to the residence and the criminal conduct: himself" and contends that "Special Agent Tomsovic explained that based on his expertise, dealers involved in narcotics trafficking, like Perez, typically keep narcotics and drug-related items where they reside[.]" Opp'n to Mot. to Suppress at 10–11. The Government also argues that "the evidence that Perez utilized his vehicle, . . ., in connection to the criminal activities, and that the Target Vehicle was registered in Perez's name at [his home] address . . ., provided additional probable cause" for a warrant to search his home. *Id.* at 11–12. Finally, the Government argues that even if the warrant lacked probable cause, the evidence from the search should not be suppressed under the good faith exception. *Id.* at 17–18.

In reply, Mr. Perez argues that "several courts—specifically in the Second Circuit—have held that 'where there is no evidence linking a defendant's residence to criminal activity and the affiant has merely predicated based on experience that drug paraphernalia will be found there, there is no probable cause to search the residence.'" Reply re Mot. to Suppress at 2 (quoting *Calderon v. City of New York*, 138 F.Supp.3d 593, 607 (S.D.N.Y. 2015)). Mr. Perez also argues that he alone is not a sufficient nexus and claims "if the government was permitted to search any

location because a defendant engaged in some kind of criminal activity that had no connection to his home, such conduct would be in direct contravention of the Fourth Amendment." *Id.* at 5. He also argues that the good faith exception does not apply because the "warrant was facially deficient on the question of whether there was a nexus between the criminal activity and the defendant's residence." *Id.*

The Government, in its sur-reply, asserts that "there are specific instances of criminal conduct involving Perez and his residence (Target Location-1), including his travel from the residence to another location (operated by his wife) to conduct a hand-to-hand narcotics transaction, and his travel from his residence to the stash location where the firearms were received by mail." Sur-Reply re Mot. to Suppress at 2. The Government further argues that the good faith exception applies because "the warrant, on its face, was not deficient as it correctly identified the location to be searched, the crimes for which evidence was believed to be located therein, and the warrant was signed by the issuing federal Magistrate Judge." *Id.* at 2–3.

The Court agrees.

In *Calderon*, where the court denied a motion to dismiss the plaintiff's false arrest claim, the magistrate judge issued a warrant allowing search of the plaintiff's apartment after officers allegedly made false statements that they observed a suspect who was not the plaintiff leaving the plaintiff's apartment prior to his narcotics sales. The court determined that there was probable cause for the warrant facially because the officer attested that he observed the suspect leaving Ms. Calderon's apartment before his sales and entering it following sales, and because the suspect's driver's license listed her apartment as his address. *Calderon*, 138 F. Supp. 3d at 605, *on reconsideration in part*, No. 14 CIV. 1082 PAE, 2015 WL 6143711 (S.D.N.Y. Oct. 19, 2015). Ms. Calderon alleged that neither she nor anyone in her family knew the suspect, and that

the suspect lived in another apartment in the building. *Id.* at 601–602. The court found that, without allegations that the suspect was seen leaving Ms. Calderon's apartment, there was not probable cause to issue a warrant to search her residence. *Id.* at 607 ("[A] corrected affidavit lacking references to Perez's entering and exiting [Calderon's apartment] would not have supported probable cause to search that apartment.").

By contrast, here, the Master Affidavit alleged that Mr. Perez conducted narcotics and firearms sales out of his vehicle and was seen leaving his residence in his vehicle—which was registered to Mr. Perez at his residence—before and after these sales. Master Affidavit ¶¶ 16, 53–60, 83–90, 102–14, 158. In addition, while Mr. Perez was allegedly observed retrieving packages from a stash house after leaving his residence, those packages were alleged to contain firearms, not narcotics. *Id.* ¶¶ 90, 114. As a result, it is reasonable to infer that Mr. Perez may have stored at least narcotics in his residence based on the proximity in time between Mr. Perez leaving his residence and conducting narcotics sales. *See United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) ("A showing of nexus does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." (internal quotation marks and citation omitted)). As a result, considering the totality of the circumstances, substantial evidence supported the magistrate judge's determination that there was probable cause to search Mr. Perez's residence.[5]

---

[5] In addition, while the Court finds that probable cause existed to effectuate the search warrant, even if it did not, the good faith exception would apply given the extensive detail set forth in the Master Affidavit regarding the alleged controlled purchases and GPS monitoring of Mr. Perez. *See United States v. Rios*, 881 F. Supp. 772, 777 (D. Conn. 1995) (concluding that "the searching officers' reliance on the affidavit and warrant was objectively reasonable" where the "affidavit [was] extremely detailed and specific in most respects; no officer reviewing it would have discerned that it lacked probable cause to support a search of [defendant's] apartment"); *see also United States v. Leon*, 468 U.S. 897, 926 (1984) (applying good faith exception where "[t]he affidavit related the results of an extensive investigation and, . . ., provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause"); *United States v. Fama*, 758 F.2d 834, 837 (2d Cir. 1985) (good faith exception applies where federal agent worked with an Assistant United States Attorney ("AUSA") to

Accordingly, Mr. Perez's motion to suppress will be denied.

### D. The Motion for Severance

Rule 14 of the Federal Rules of Criminal Procedure provides, in relevant part, that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Cim. P. 14. There is a strong preference, however, for joint trials in the federal system. *See Richardson v. Marsh*, 481 U.S. 200, 210 (1987); *see also United States v. Jackson*, 180 F.3d 55, 75 (2d Cir. 1999) ("[T]here is a clear preference that defendants who are indicted together be tried jointly[.]"). As a result, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

The Court previously denied Mr. Baker's motion to sever his case from that of Mr. Perez. Order, ECF No. 131. Mr. Baker asks the Court to reconsider its prior Order and sever Counts Eighteen and Nineteen—which relate to allegations that Mr. Perez distributed narcotics. He argues that "[i]n failing to sever the counts the court would allow prejudicial spillover of irrelevant and prejudicial evidence regarding drug dealing." Second Mot. to Sever at 1–2. He

---

draft an affidavit based on the agent's information, and a judge found probable cause upon reviewing the affidavit because "[t]he expertise of the AUSA, Judge Cannella's findings and Judge Costantino's issuance of the warrant were factors which supported an objectively reasonable belief in probable cause to search appellee's home"); *United States v. Cancelmo*, 64 F.3d 804, 808 (2d Cir. 1995) (good faith exception applied where facts in affidavit "alone might not establish probable cause, [but] when 'viewed in their totality [they are] fully consistent with an objectively reasonable belief' by the executing agents that the warrant was valid." (citing *Fama*, 758 F.2d at 838 (alteration in original))).

argues that "[a]t a minimum the court should request an in-camera review of parts of the evidence." *Id.* at 12.

Mr. Baker first argues that "[t]he evidence of the drug transaction, Mr. Perez's general drug dealing, and Mr. Perez's gang activity would not be relevant to the firearm trafficking[,]" and "[i]f the evidence is found to be relevant, then it would be likely an additional instruction would be necessary to clarify what is to be used and how." *Id.* at 13–14. He then argues that joining counts related to drug charges would result in prejudicial spillover evidence that outweighs the interest of judicial economy. *Id.* at 15–16.

In response, the Government argues that Mr. Baker "fails to articulate a single piece of such discovery that substantially affects the basis for severance," and does not cite any controlling caselaw that the Court has overlooked in its prior motion denying severance.

The Court agrees.

For the reasons set forth in the Court's prior Order, Mr. Baker has failed to show that severance is warranted in this case. While Mr. Baker argues that evidence of drug dealing that is unrelated to the conduct with which he is charged will be prejudicial, he fails to cite evidence or controlling precedent that the Court overlooked in its prior Order suggesting that this evidence is so unduly prejudicial as to warrant severance. *See Shrader*, 70 F.3d at 257 ("The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). Nor has he demonstrated that limiting instructions to the jury would be insufficient to mitigate the risk of undue prejudice. *See also United States v. Rajaratnam*, 753 F. Supp. 2d 299, 305 (S.D.N.Y. 2010) ("[T]he coexistence of Rule 8 and Rule 14 assumes an 'inevitable tolerance

of some slight prejudice to codefendants, which is deemed outweighed by the judicial economies

resulting from the avoidance of duplicative trials.' Moreover, the use of limiting instructions has

frequently been found to be an effective device for curing any prejudicial spillover that may

result from a multi-defendant, multi-count trial." (quoting *United States v. Cardascia*, 951 F.2d

474, 482–83 (2d Cir. 1991))); *see also United States v. Lasanta*, 978 F.2d 1300, 1307 (2nd Cir.

1992) *abrogated on other grounds by Florida v. White*, 526 U.S. 559 (1999) ("[T]he district

court countered any possible spillover with specific instructions to the jury" with instruction

"that the jury should consider the evidence separately against each defendant[.]"); *United States*

*v. Casamento*, 887 F.2d 1141, 1153 (2d Cir. 1989) (finding no unfair prejudice where the

"district judge instructed the jury to consider the evidence against each defendant separately

from the evidence presented against the other defendants" (citing *Carson*, 702 F.2d 351, 367 (2d

Cir.), *cert. denied*, 462 U.S. 1108 (1983))).

Accordingly, Mr. Baker's second motion to sever will be denied.


## IV.    CONCLUSION

For the foregoing reasons, the Defendants' motions are **DENIED**.

**SO ORDERED** at New Haven, Connecticut, this 7th day of March, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE