# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

     v.

LUIS PEREZ.

No. 3:23-cr-92 (VAB)

## RULING AND ORDER ON MOTIONS *IN LIMINE*

Luis Perez ("Defendant") has been charged in a multi-count indictment charging him with crimes related to the possession and distribution of firearms and controlled substances. *See* Indictment, ECF No. 17, (May 31, 2023) ("Indictment"). Mr. Perez has pled guilty to all charges against him except Count Nineteen, which charges him with Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). Min. Entry, ECF No. 263.

In advance of trial, Mr. Perez and the United States of America (the "Government") have filed various motions *in limine*. Mot. *in Limine* by USA, ECF No. 240 (Mar. 14, 2025) ("Gov't MIL"); Mot. *in Limine* re Sequestration of Witnesses (Case Agents), ECF No. 246 (Mar. 14, 2025) ("MIL re Sequestration"); Mot. *in Limine* re FRE 609 as to Luis Perez, ECF No. 247 (Mar. 14, 2025) ("MIL re FRE 609 Perez"); Mot. *in Limine* re FRE 1006 (Summary Charts), ECF No. 249 (Mar. 14, 2025) ("MIL re Charts"); Mot. *in Limine* re Arrest, Convictions, Jail Calls, ECF No. 250 (Mar. 14, 2025) ("MIL re Flight"); Mot. *in Limine* re Improper Lay Opinion Testimony from Law Enforcement Witnesses, ECF No. 256 (Mar. 18, 2025) ("MIL re Opinion Testimony"); Mot. *in Limine* re Evidence Unrelated to Count Nineteen, Criminal History, and Gang Affiliation, ECF No. 257 (Mar. 18, 2025) ("Perez MIL"); Mot. *in Limine* to Exclude or Limit Expert Witness Testimony, ECF No. 285 ("MIL re Expert Testimony").

For the following reasons, the [256] and [285] motions *in limine* are **GRANTED** in part and **DENIED** in part.

The [240], [249], [250], [257] motions *in limine* are **DENIED** without prejudice to renewal at trial.

The [246], motion *in limine* is **GRANTED**.

The [247] motion *in limine* is **DENIED** as moot.

To the extent the Government's [240], [246], [249], and [250] motions *in limine* refer to evidence relevant only to Brian Baker, they are **DENIED** as moot.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes familiarity with the factual and procedural history of the case and includes only events relevant to the motions *in limine*. *See* Ruling and Order on Omnibus Motions, ECF No. 225 (Mar. 7, 2024).

On January 31, 2025, the Government filed its Notice of Disclosure Expert Witness and notified its intent to call DEA Special Agent Frank Castiglione as a drug expert and forensic examiners to testify regarding narcotics allegedly seized in connection with the case. Not. Re Expert Disclosure, ECF No. 200 ("Expert Disclosure").

On February 6, 2025, the Government filed a Supplemental Notice of Disclosure of Expert Witness in which it indicated that it may also call ATF Special Agent Seth Christy as a firearms expert. Supp. Expert Disclosure, ECF No. 210 ("Supp. Expert Disclosure")

On March 14, 2025, the Government filed several motions *in limine* and its notice of intention to introduce 404(b) evidence. Gov't MIL; MIL re Sequestration; MIL re FRE 609 Perez; MIL re Charts; MIL re Flight; Notice of Intention to Introduce 404(b) Evidence, ECF No. 241 ("Gov't 404(b) Notice").

On March 18, 2025, Mr. Perez filed his motions *in limine*. MIL re Opinion Testimony; Perez MIL.

On March 19, 2025, Mr. Perez pled guilty to all counts of the indictment, except for Count Nineteen, which charged him with Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924( c)(1)(A)(i). Min. Entry, ECF No. 263.

On March 21, 2025, the Government filed a memorandum in opposition to Mr. Perez's motions *in limine*. Mem. in Opp'n, ECF No. 271 (Mar. 21, 2025) ("Opp'n re Perez MIL").

On March 26, 2025, Mr. Perez's co-defendant, Mr. Brian Baker, pled guilty to all counts of the indictment, except for Counts Thirteen and Fourteen, which the Government indicated it intends to dismiss at sentencing. Min. Entry, ECF No. 282.

On March 26, 2025, Mr. Perez filed an additional motion *in limine*. MIL re Expert Testimony.

On that same date, the Government submitted a revised pretrial memorandum. Revised Pretrial Memorandum, ECF No. 288 ("Joint Trial Memo.").

## II.    STANDARD OF REVIEW

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce*, 469 U.S. at 41 n.4).

A court should exclude evidence on a motion *in limine* only if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 3:09-cv-1955

(VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal quotation marks omitted). The court also retains discretion to "reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (internal quotation marks omitted).

## III.    DISCUSSION

Mr. Perez has filed a motion *in limine* seeking to exclude (1) evidence unrelated to Count Nineteen, (2) evidence of his criminal record and that he served time in prison, and (3) evidence of his alleged gang membership. Perez MIL, ECF No. 257. He has also filed a motion *in limine* to exclude improper lay opinion testimony from law enforcement witnesses, MIL re Opinion Testimony, ECF No. 256, and a motion *in limine* to exclude or limit the testimony of the Government's expert witness, DEA Special Agent Frank Castiglione.

The Government has filed several motions *in limine* seeking to introduce evidence of Mr. Perez's criminal history and his alleged gang affiliation. *See* Gov't MIL, ECF No. 240; MIL re FRE 609 Perez, ECF No. 247. The Government also noticed its intention to introduce 404(b) evidence about firearms purchases and United States Postal Service ("USPS") receipts outside of the dates of the charged conspiracy.[1]

The Government also filed a motion *in limine* seeking limiting jury instructions regarding the admissibility of evidence of conversations between Mr. Perez and a confidential informant where Mr. Perez makes statements about his felony status, and evidence that Mr. Perez and his co-conspirators were convicted felons. MIL re Arrest, ECF No. 250.

---

[1] Before Mr. Perez pled guilty to all Counts except for Count Nineteen, the Government sought to introduce conversations between a confidential informant and Mr. Perez discussing uncharged misconduct by Mr. Perez, *see* ECF No. 241 at 1, but the Government has indicated that it no longer intends to introduce this evidence. *See* Gov't Opp'n re Perez at 16–17; 20–22.

Finally, the Government has filed motions *in limine* seeking to exclude its case agents from sequestration, MIL re Sequestration, ECF No. 246, and to use summary chart evidence, MIL re Charts, ECF No. 249.

### A.  Motions *in Limine* Re: 404(b) Evidence

Evidence of prior crimes, wrongs, or acts may be admitted in some circumstances for limited purposes such as proving motive or impeaching a witness's credibility. *See* Fed. R. Evid. 404(b) (noting that evidence of other past crimes, wrongs, or acts "is not admissible to prove a person's character" but that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). The Second Circuit follows the inclusionary rule for other act evidence under Rule 404(b), "which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022) (quotation marks omitted). This rule, however, "is not a carte blanche to admit prejudicial extrinsic act evidence [that] is offered to prove propensity, ... or otherwise to allow propensity evidence in sheep's clothing." *Id.* (alteration in original) (citations and quotation marks omitted).

At all times, however, such evidence is subject to the balancing test of Rule 403, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice." Fed. R. Evid. 403; *see also Lewis v. Velez*, 149 F.R.D. 474, 483 (S.D.N.Y. 1993) ("Convictions for crimes or other bad acts that bear a close resemblance to actions alleged in the current case are likely to run afoul of Rule 404(b), because they cause unfair prejudice to the party against whom they are offered by suggesting that the party has a propensity to commit such acts.").

Additionally, under Rule 404(b)(3), in a criminal case, the Government must:

(A) provide reasonable notice of any such evidence that the prosecutor intends to offer at

trial, so that the defendant has a fair opportunity to meet it;

(B) articulate in the notice the permitted purpose for which the prosecutor intends to offer

the evidence and the reasoning that supports the purpose; and

(C) do so in writing before trial—or in any form during trial if the court, for good cause,

excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3).

"In 2020, Rule 404(b)'s notice requirement was amended to require the Government to

articulate a non-propensity purpose for which the evidence is offered and the basis for

concluding that the evidence is relevant in light of this purpose. The Committee stated that the

amendment was intended to require the Government to provide not only the general nature of the

evidence but also to describe the specific act that the evidence would tend to prove, and explain

the relevance of the evidence for a non-propensity purpose." *United States v. Patel*, No. 3:21-

CR-220 (VAB), 2023 WL 2643815, at *26 (D. Conn. Mar. 27, 2023) (internal citations and

quotation marks omitted) (citing Fed. R. Evid. 404 Committee Notes (2020 Amend.)).

### 1. Evidence of Gang Affiliation

"Courts have 'recognized the substantial risk of unfair prejudice attached to gang

affiliation evidence, noting such evidence is likely to be damaging to a defendant in the eyes of

the jury.'" *United States v. Taveras*, 585 F. Supp. 2d 327, 336 (E.D.N.Y. 2008) (quoting *United

States v. Irvin*, 87 F.3d 860, 864 (7th Cir.1996)). "That is because people tend to associate gangs

with violence and criminality. That taint of criminality might lead a jury to conclude that [the

defendant] (and his alleged coconspirators) have a propensity to commit crime." *United States v.

Pappas*, No. 3:23-CR-62-12 (OAW), 2024 WL 4986172, at *3 (D. Conn. Dec. 5, 2024); *see also*

*United States v. Molton*, 743 F.3d 479, 482 (7th Cir. 2014) ("Evidence of gang affiliation must be handled with care, because 'a jury is likely to associate gangs with criminal activity and deviant behavior,' raising the 'specter of guilt by association or a verdict influenced by emotion.'" (citation omitted)).

Mr. Perez seeks to exclude evidence of his alleged affiliation with the Latin Kings and argues that such evidence is not relevant to the remaining Count against him and is unduly prejudicial. Perez MIL at 5–6.

In response, the Government originally argued that evidence of his alleged gang affiliation is necessary to demonstrate the relationship between Mr. Perez and a co-conspirator, who allegedly was also a member of the Latin Kings. After Mr. Baker's plea, however, the Government indicated that it no longer intends to offer evidence pertaining to Mr. Perez's gang status. *See* Joint Trial Memo. at 4.

Accordingly, Mr. Perez's motion *in limine* to exclude evidence of his alleged gang affiliation, ECF No. 257, and the Government's motion *in limine* to introduce such evidence, ECF No. 240, are denied as moot.[2]

### 2.    Evidence of Prior Convictions

"Rule 609(a)(1) allows prior convictions to be used for impeachment purposes where the 'crime was punishable by death or imprisonment in excess of one year,' subject to the balancing test of Rule 403." *Martino v. Korch*, 131 F. Supp. 2d 313, 315 (D. Conn. 2000); Fed. R. Evid. 609(a)(1)(A) ("evidence of a criminal conviction . . . for a crime that, in the convicting

---

[2] The Court notes that even if the Government did not withdraw this evidence, it would be inclined to grant Mr. Perez's motion to exclude evidence of Mr. Perez's alleged gang affiliation, the relevance of which is minimal compared to the compared to the "highly prejudicial" effect this evidence may have. *See United States v. Nelson*, 103 F. Supp. 2d 512, 513 (N.D.N.Y. 1999); *see also Pappas*, 2024 WL 4986172, at *3 (precluding evidence of defendant's gang affiliation where "none of the four remaining defendants faces any charges alleging physical violence," "several codefendants (many of whom have pleaded guilty) were not alleged to have been gang affiliated," and "gang affiliation [was] not necessary to 'demonstrate a criminal relationship.'").

jurisdiction, was punishable by death or by imprisonment for more than one year. . . must be admitted, subject to Rule 403[.]"). Rule 609(a) "incorporates Fed. R. Evid. 403, and requires the Court to balance whether the probative value of the evidence is 'substantially outweighed by the danger of unfair prejudice, confusion, or waste of time.' When proceeding through the Rule 403 analysis, courts consider the following factors: '(1) the impeachment value of the crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crimes and the conduct at issue, and (4) the importance of the credibility of the witness.'" *Franko v. Farrell*, No. 3:17-CV-01558 (RMS), 2019 WL 1772400, at *3 (D. Conn. Apr. 23, 2019) (quoting *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997)). "Although all of these factors are relevant, '[p]rime among them is [the first factor, *i.e.*] whether the crime, by its nature, is probative of a lack of *veracity*.'" *United States v. Brown*, 606 F. Supp. 2d 306, 312 (E.D.N.Y. 2009) (quoting *U.S. v. Ortiz*, 553 F.2d 782, 784 (2d Cir.1977) (alterations and emphasis in original).

Rule 609(a)(1) "presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully," although "all Rule 609(a)(1) felonies are not equally probative of credibility[.]" *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005). In *Estrada*, the Second Circuit discussed that while certain crimes, such as "crimes that involve evasions of responsibility or abuse of trust," rank "high on the scale of probative worth on credibility," for crimes "ranking low on that scale, including crimes of violence," which can include "particularly depraved and offensive acts, such as wanton violence or sexual immorality, the jury is likely to draw the prejudicial inference that the witness is a bad person while at the same time the jury may derive little probative value from the conviction since these crimes say little about credibility[.]" *Id*. at 618 (quoting 28 Wright & Gold § 6134 at 232–33).

Rule 609(b), however, places a limitation on the use of evidence of a conviction to impeach a witness when "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed. R. Evid. 609(b). In such cases, "[e]vidence of the conviction is admissible only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b).

Mr. Perez argues that evidence regarding his prior convictions, status as a convicted felon, and statements made about his time in jail should be excluded. Perez MIL at 4–5.

While the Government previously sought to introduce evidence of Mr. Perez's convictions on impeachment, *see* MIL re FRE 609 Perez, it no longer intends to introduce evidence related to Mr. Perez's convictions and statements made regarding his previous time incarcerated. Opp'n re Perez MIL at 16–17. The Government argues, however, that it should be allowed to introduce evidence about Mr. Perez's status as a convicted felon because this evidence is relevant to the remaining Section 924(c) charge against Mr. Perez, as his inability to legally possess a firearm is probative of his intention to use firearms "in furtherance of" a drug crime. *Id.* at 17–18. In particular, the Government argues that the Second Circuit's opinion in *United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006) considered the defendant's status as a felon, and thus inability to legally possess a firearm, in assessing the evidence against him for a Section 924(c) charge. *Id.*

The Court disagrees, at least at this stage.

Under Section 924(c), "any person who, during and in relation to any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries

a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the

punishment provided for such . . . drug trafficking crime . . . be sentenced to a term of

imprisonment of not less than 5 years[.]" 18 U.S.C § 924(c)(1)(a). "[T]he requirement in §

924(c)(1) that the gun be possessed in furtherance of a drug crime may be satisfied by a showing

of some nexus between the firearm and the drug selling operation." *United States v. Finley*, 245

F.3d 199, 203 (2d Cir. 2001).

In *United States v. Snow*, when evaluating the sufficiency of the evidence against the

defendant, the Second Circuit noted that the Fifth Circuit had set forth the following factors that

a jury may consider when determining if a firearm was used "in furtherance of" a drug

trafficking crime:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of
> the weapon, whether the weapon is stolen, the status of the possession (legitimate or
> illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and
> circumstances under which the gun is found.

*Snow*, 462 F.3d at 63 n.6 (citing *United States v. Ceballos-Torres*, 218 F.3d 409, 413–14 (5th

Cir.), *amended on reh'g in part*, 226 F.3d 651 (5th Cir. 2000).

"However, since each case has its own wrinkles, reliance on such a list is of limited

utility. Ultimately, the test is whether a reasonable jury could, on the evidence presented at trial,

find beyond a reasonable doubt that possession of the firearm facilitated a drug trafficking crime

. . .; 'in furtherance' means that the gun afforded some advantage (actual or potential, real or

contingent) relevant to the vicissitudes of drug trafficking." *United States v. Lewter*, 402 F.3d

319, 322 (2d Cir. 2005); *see also Snow*, 462 F.3d at 62 ("[A]lthough courts look at a number of

factors to determine whether such a nexus exists, the ultimate question is whether the firearm

'afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of

drug trafficking.'" (quoting *Lewter*, 402 F.3d at 322)). As a result, Mr. Perez's ability to possess

a firearm legally may be one of several factors relevant to proving the Section 924(c) charge against him. *See United States v. Black*, 845 F. App'x 42, 50 (2d Cir. 2021) (summary order) (concluding "the district court did not err in its jury instructions" where the court "provided a non-exhaustive list of factors that the jury could consider in determining whether a gun was used in furtherance of drug trafficking" that "tracked language from *Snow*" (citing *Snow*, 462 F.3d at 62–63)). In determining the admissibility of this evidence, however, the Court must consider whether the relevance of this evidence is outweighed by its prejudicial nature under the facts of this particular case. *See* Fed. R. Evid. 403. It is unclear at this stage whether Mr. Perez's ability to legally possess a firearm would be probative, or, even if it is marginally relevant, not cumulative of other evidence or unfairly prejudicial, considering the narrow scope of the remaining 924(c) charge against him. As a result, the Court will wait until trial when it can view this evidence in context to determine its admissibility. *See In re MTBE*, 643 F. Supp. 2d at 476 ("[C]ourts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context.") (internal citation omitted).

As for other details regarding Mr. Perez's criminal history, because Government has indicated that it no longer intends to introduce evidence of Mr. Perez's prior convictions or previous time in jail, the parties' motions seeking to introduce or exclude this evidence, *see* MIL re FRE 609 Perez, ECF No. 247, Perez MIL, ECF No. 257, are denied as moot insofar as they relate to this evidence.

Accordingly, Mr. Perez's motion *in limine* to exclude evidence of his status as a convicted felon, ECF No. 257, and the Government's motions *in limine*, ECF No. 240 and 250, to introduce this evidence are denied without prejudice to renewal at trial.

### B.  Motion *in Limine* Re: Lay Witness Testimony

Federal Rule of Evidence 701 permits lay opinion testimony that is "rationally based on the witness's perception" or "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Generally, a rational perception is one that involves firsthand knowledge or observation. *U.S. v. Yannotti*, 541 F.3d 112, 125 (2d Cir. 2008). "Where the jury is 'in as good a position as the witness to draw the inference' to which the opinion relates, the opinion is not helpful and should not be admitted." *U.S. v. Walker*, 974 F.3d 193, 205 (2d Cir. 2020) (quoting U*.S. v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992)).

By contrast, Federal Rule of Evidence 702 allows for expert testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied principles and methods to the facts of the case." Fed. R. Evid. 702. "Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on [their] own." *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008).

The Second Circuit has emphasized that "when a law enforcement official testifies as both a fact and an expert witness, the danger that his expert testimony will stray from applying reliable methodology" and instead convey to the jury "his sweeping conclusions about a defendant's activities is particularly acute." *U.S. v. Cruz*, 363 F.3d 187, 195 (2d Cir. 2004) (quoting *U.S. v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003)) (quotation and punctuation marks omitted).

Mr. Perez claims that he "anticipates that law enforcement witnesses may seek to testify about their personal experience involving firearms and narcotics investigations" to prove the Government's case against him on Count Nineteen, and that "[t]his is a determination left to the province of the jury, and the jury should not be influenced by law enforcement witnesses who have not been disclosed as experts."

In response, the Government states that it "intends to call numerous law enforcement officers and agents who took part in the investigation in this case," and that these witnesses' "testimony will be based on their observations and perception as they took part in various stages of the investigation related to the firearms trafficking conspiracy." Opp'n re Perez MIL at 23. The Government argues that this is not expert testimony and thus Mr. Perez's motion can be denied as moot.

The Court disagrees, at least in part.

The Government previously noticed its intention to call ATF Special Agent Seth Christy to offer expert testimony on "the interstate nexus of the firearm/ammunition at issue in this case" and the following:

> firearms function and design, to include operability and malfunctions; nomenclature and markings on firearms; firearms maintenance and other factors that could affect function; firearms classifications, types, and subtypes; general manufacturing procedures and processes, location and entity of the manufacturer of firearms; ammunition inter-operability; the purpose and function of accessories; the use and carriage of firearms; and the acquisition, retention, and use of illegal firearms by prohibited persons and others.

The Government has indicated that because Mr. Perez has pled guilty to Count Seventeen, which charged him with unlawful possession of a firearm by a felon in violation of 18 U.S.C. Section 922(g), it no longer requires expert testimony regarding this "interstate nexus." In its response to Mr. Baker's motion *in limine*, however, the Government indicated that while it does not intend to call a firearms trafficking expert in this case, it "does anticipate calling

ATF SA Seth Christy to testify concerning his knowledge pertaining to specific seized firearms and magazines, but such testimony stems from his training as a law enforcement officer and his involvement in the case." Mem. in Opp'n, ECF No. 266 at 2 (Mar. 19, 2025). The Government argues that Special Agent Christy's testimony regarding the "types of firearms seized, such as a firearm without serial markings (commonly referred to as a 'Ghost Gun'), one of the firearm's classification as an assault rifle based on its features, extended magazines, and testimony concerning the types of magazine and calibers of ammunition seized" is not expert testimony. *Id.* at 2–3.

Certainly, Special Agent Christy and other law enforcement officers may testify about their own experiences in this investigation, so long as such testimony is "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701; *see also U.S. v. Kaplan*, 490 F.3d 110, 118 (2d Cir. 2007) ("[A] lay opinion must be the product of reasoning processes familiar to the average person in everyday life" (quoting *U.S. v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005))). The Government's response, however, indicates that Special Agent Christy's testimony may involve areas that would require "specialized knowledge" improper for lay witnesses, such as, for example, "one of the firearm's classification as an assault rifle based on its features, extended magazines." Opp'n re Baker MIL at 3*; see Kaplan*, 490 F.3d at 118 ("[W]e have observed that ... the 'not based on specialized knowledge' requirement requires that a lay opinion must be the product of reasoning processes familiar to the average person in everyday life." (internal quotation marks omitted)).

Special Agent Christy's testimony, therefore, may encompass both fact witness and expert witness testimony, posing a heightened risk of confusion for the jurors. *See Cruz*, 363 F.3d at 195 ("When a law enforcement official testifies about the facts of a case and offers expert

opinions, 'a juror understandably will find it difficult to navigate the tangled thicket of expert and factual testimony from the single witness, thus impairing the juror's ability to evaluate credibility.'" (citation omitted)); *Mejia*, 545 F.3d at 190 ("If the officer expert strays beyond the bounds of appropriately 'expert' matters, that officer becomes, rather than a sociologist describing the inner workings of a closed community, a chronicler of the recent past whose pronouncements on elements of the charged offense serve as shortcuts to proving guilt."). As a result, the Government must either use Special Agent Christy as a firearms expert only, demonstrate that his testimony meets the requirements of Rule 702, and forego any of his testimony about specific activities and work related to this case, or limit his testimony only to lay opinions. *See United States v. Barrow*, 400 F.3d 109, 124 (2d Cir. 2005) (where a law enforcement witness testifies as both a fact and expert witness the Second Circuit has "urged district courts to exercise particular vigilance to ensure that the witness's dual role does not impair the jury's ability properly to evaluate credibility.")

Accordingly, the Court grants, in part, Mr. Perez's motion, ECF No. 256. To the extent the Government still seeks to offer testimony from Special Agent Christy, it must either move to certify Special Agent Christy as an expert or limit his testimony to lay descriptions that do not suggest specialized knowledge more appropriate for an expert witness under Rule 702.

### C.  Motion *in Limine* Re: Expert Testimony

As discussed above, under Federal Rule of Evidence 702, a party may offer expert testimony on "matters that the average juror is not capable of understanding on [their] own." *Mejia*, 545 F.3d at 194; *see also United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991); *United States v. Tapia-Ortiz*, 23 F.3d 738, 740 (2d Cir. 1994) (cautioning that expert testimony relating to "the operations of narcotics dealers ... should normally be used only for subjects that

have esoteric aspects reasonably perceived as beyond the ken of the jury" (internal quotation marks omitted)).

"[T]he operations of narcotics dealers are a proper subject for expert testimony under Fed. R. Evid. 702 ... where the subject matter of the testimony is beyond the ken of the average juror." *Mejia*, 545 F.3d at 191 (quoting *Castillo*, 924 F.2d at 1232). More specifically, in evaluating expert testimony regarding firearms as being "tools" of the drug trade, courts have found that this "linkage is well within the everyday knowledge of an average juror" and thus expert testimony on this linkage is improper. *See United States v. Reddick*, 284 F. Supp. 3d 159, 162 (D. Conn. 2018) (citing *United States v. Stanley*, 2016 WL 7104825, at *4 (D. Conn. 2016) ("[T]he jury does not need an expert's opinion about the obvious proposition that drug dealers use violence and firearms to protect their drug trafficking activity."); *Reddick*, 284 F. Supp. 3d at 162 ("I can't see the need for an expert on this issue any more than I would see the need for an expert in a bank robbery case to say that bank robbers like to wear masks or in a terrorism case to say that terrorists like to blow up bombs.").

The Government has indicated that its narcotics expert, Special Agent Castiglione, will offer expert testimony on the following topics:

> the manner, means and common practices of narcotics traffickers and narcotics trafficking organizations, including, but not limited to, evidence indicative of drug distribution versus drug possession for personal use; typical quantities and prices for street-level distribution; common practices in the distribution of narcotics; and the utility of certain items (*i.e.*, "tools of the trade") to further drug trafficking operations, such as the use of packaging materials, plastic baggies, scales, and firearms, and general information on street level narcotics sales in Connecticut in the relevant time period.

Mr. Perez has moved to exclude the testimony of the Government's proposed narcotics expert, Special Agent Castiglione, or, alternatively, to limit his testimony to his experience related to the packaging and sale of narcotics. MIL re Expert Testimony. Mr. Perez argues that "[t]he proposed expert testimony regarding 'tools of the trade' of drug dealers, and/or that drugs

and guns go hand in hand are lay matters that a jury is capable of understanding" and that "even if the Court were to find it admissible, is unfairly prejudicial and outweighs any probative value." *Id.* at 2. Mr. Perez further argues that "Mr. Perez has already pled to the narcotics counts, thereby raising the question of why SA Castiglione's testimony is still relevant to the case that remains." *Id.* at 4.

The Court agrees.

While testimony regarding the "typical quantities and prices for street-level distribution; common practices in the distribution of narcotics" likely is "specialized knowledge" for which expert testimony is useful to help the jury evaluate the evidence, *see United States v. Walters*, No. 3:20-CR-89 (JAM), 2022 WL 1498247, at *10 (D. Conn. May 12, 2022), "the jury does not need an expert's opinion about the obvious proposition that drug dealers use violence and firearms to protect their drug trafficking activity." *Stanley*, 2016 WL 7104825, at *4. In addition, even if this were "specialized knowledge," this testimony is likely to be unfairly prejudicial, particularly here where Mr. Perez has pled guilty to the underlying narcotics charge in Count Eighteen, and the sole issue before the jury is whether he used a firearm in furtherance of this drug-related offense. *See Reddick*, 284 F. Supp. 3d at 163 ("For an expert to come in to state the obvious about guns and drug dealing going together not only exceeds the permissible limits of expert testimony but also comes with some unfair risk that the jury will conclude largely because of the expert's imprimatur that the gun at issue here must have had something to do with drug dealing. . . . This is precisely the type of made-to-order expert testimony that the Second Circuit has warned should not be permitted in these kinds of cases."). As a result, Special Agent Castiglione may not offer expert testimony about firearms being "tools of the trade" for drug trafficking. The Government, however, "is free to argue during closing statements the common

sense reasons why someone who is engaged in unlawful narcotics trafficking may decide to possess a firearm for protection." *Reddick*, 284 F. Supp. 3d at 163–64 (noting "[t]his is in keeping with defendant's concession that 'the link between guns and drugs is common knowledge, and a concept that is easy for any lay person to understand'"); *see also* MIL re Expert Testimony at 3 ("[T]he link between guns and drugs is common knowledge, and a concept that is easy for any lay person to understand.").

In addition, while the remainder of Special Agent Castiglione's testimony is likely to be specialized knowledge, the Court is doubtful that such evidence remains relevant given that Mr. Perez has pled guilty to the drug trafficking charge in Count Eighteen, and thus the sole contested issue before the jury is whether Mr. Perez used a firearm in furtherance of this drug trafficking crime. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) ("Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" (citation omitted)). To the extent that the parties do not reach a stipulation making the remainder of Special Agent Castiglione's testimony moot, however, the Court will defer judgment on the relevance of the remainder of Special Agent Castiglione's expert testimony until it can view such evidence in context at trial.

Accordingly, Mr. Perez's motion *in limine*, ECF No. 285, is granted in part and denied in part. Special Agent Castiglione is precluded from offering expert testimony on linking firearms as "tools of the trade" for drug trafficking. He may, however, offer expert testimony on the operations of drug trafficking that require "specialized knowledge," to the extent that such testimony is relevant to the remaining charge at issue in this case.

### D.  Motion *in Limine* Re: Evidence Unrelated to Count Nineteen

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

Mr. Perez argues that "[n]early all" of the Government's exhibits are irrelevant to the sole remaining Count against him and moves to exclude evidence related to the charges to which Mr. Perez has pled guilty. Perez MIL at 3–4.

In response, the Government states that it intends to amend its exhibit list to "[h]eavily redact" videos of the controlled purchases and remove certain photos and text message conversations. Opp'n re Perez MIL at 21–22. The Government also argues that evidence regarding the dismissed counts is relevant to Count Nineteen, as his possession of several firearms connected to the firearms trafficking conspiracy is relevant to meeting its burden in showing that he possessed at least one of the firearms in furtherance of the drug trafficking conspiracy. *Id.* at 11; *see also id.* at 6–11 (discussing evidence Government intends to introduce and its relevance to the remaining charge against Mr. Perez).

The Court agrees, at least at this stage.

The Government has indicated that it no longer intends to call the specific exhibits regarding Mr. Perez's alleged gang affiliation that Mr. Perez challenges as being "unduly prejudicial," Exhibits 154 and 155, *see* Opp'n re Perez MIL at 21, and regardless, the Court has precluded evidence of Mr. Perez's gang affiliation in this Ruling and Order. As for the remaining exhibits, while it is difficult to evaluate Mr. Perez's motion without other specific objections, at this stage, the Government has indicated that, in light of Mr. Baker's plea, it no longer intends to introduce "[e]vidence pertaining to the firearm-controlled purchases, including testimony, pole

camera footage, firearms recovered, or recordings; . . . [e]vidence pertaining to his codefendants' arrests; [and] [e]vidence pertaining primarily to the firearms trafficking conspiracy." Joint Trial Memo at 4.

Accordingly, the Court denies Mr. Perez's motion *in limine*, ECF No. 257, without prejudice to renewal at trial when the Court may evaluate the relevance of proffered evidence in context. *See In re MTBE*, 643 F. Supp. 2d at 476 ("[C]ourts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context.") (internal citation omitted).

### E.  Motion *in Limine* Re: Sequestration of Case Agents

Federal Rule of Evidence 615 provides that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Rule 615, however, does not authorize exclusion of a "person whose presence a party shows to be essential to presenting the party's claim or defense," or a person authorized by statute to be present. Fed. R. Evid. 615(a)(1), (3), (4).

The Second Circuit has held that district courts have "discretion to exempt the government's chief investigative agent from sequestration, and it is well settled that such an exemption is proper under Rule 615(2), deeming the agent-witness a 'representative' of the government." *U.S. v. Rivera*, 971 F.2d 876, 889 (2d Cir. 1992) (citations omitted). "Since the chief investigating agent may be of significant help to the prosecution during the course of a trial, the trial court has discretion to make an exception to the general rule of sequestration of witnesses in his case." *U.S. v. Pellegrino*, 470 F.2d 1205, 1208 (2d Cir. 1972); *see also U.S. v. Lee*, 834 F.3d 145, 162 (2d Cir. 2016) ("[T]he district court has 'discretion to exempt the government's chief investigative agent from sequestration, and it is well settled that such an

exemption is proper under Rule 615[b], deeming the agent–witness a 'representative' of the government.'" (quoting *Rivera*, 971 F.2d at 889) (alteration in original)).

The Government requests that the Court exempt its case agents, FBI Special Agents Daniel Veale and Corbett Tomsovic, from sequestration. MIL re Sequestration at 1. The Government argues that "due to the preparation of multiple witnesses required before trial, as well as the need to assist with witnesses and evidence during trial, the Government requests to exclude both FBI case agents, as opposed to a single case agent" from sequestration. *Id.* at 2.

The Court agrees.

Special Agent Tomsovic prepared the Master Affidavit submitted in this case, *see* ECF No. 15-1 ("Master Affidavit"), detailing the results of the federal investigation that gave rise to the charges against Mr. Perez. Moreover, given the complexity of the case, which alleges conduct spanning multiple jurisdictions, *see, e.g.*, Master Affidavit at ¶ 26 ("The FBI and other law enforcement agencies are investigating a gun trafficking organization . . . in and around Connecticut, Kansas, and California"), the Court will exercise its discretion to exempt one additional case agent, Special Agent Veale, who the Government indicates "will be needed to go in and out of the courtroom to move witnesses, handle evidence, and assist in coordinating the Government's presentation." MIL re Sequestration at 2; *see United States v. Jackson*, 60 F.3d 128, 134 (2d Cir. 1995) ("While we would expect it to be the rare case when a district judge exempts more than one witness under a particular subprovision of Rule 615, we hold that a district court judge has discretion to do so.").

As a result, in the absence of any objections to sequestration from the Defendant, the Court will exercise its discretion to exempt the Government's case agents from sequestration. *See e.g.*, *Lee*, 834 F.3d at 162 ("[T]he district court has 'discretion to exempt the government's

chief investigative agent from sequestration, and it is well settled that such an exemption is proper under Rule 615[b], deeming the agent–witness a 'representative' of the government.'" (quoting *Rivera*, 971 F.2d at 889) (alteration in original)); *Geders v. United States*, 425 U.S. 80, 87 (1976) ("The aim of ... the practice of sequestering witnesses ..., is twofold. It exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid." (citation omitted)); *United States v. Donald*, No. 3:21-CR-8 (VAB), 2023 WL 6958797, at *32 (D. Conn. Oct. 20, 2023) (granting the Government's motion to exclude an FBI Special Agent from sequestration when they participated substantially in the case's evidence gathering, and the Defendants did "not respond[] to the Government's motion . . .[nor] object during the motions hearing"); *United States v. Ray*, 589 F. Supp. 3d 298, 301 (S.D.N.Y. 2022) (granting an exception to sequestration to an IRS agent who was "critical to the five counts charged" and whose testimony was "not susceptible to tailoring").

Accordingly, the Government's motion *in limine* to exempt Special Agents Tomsovic and Veale from sequestration, ECF No. 246, is granted.

### F.  Motion *in Limine* Re: Summary Chart Evidence

Rule 1006 of the Federal Rules of Evidence permits parties to "use a summary, chart, or calculation to prove the content of voluminous writings ... that cannot be conveniently examined in court." Fed. R. Evid. 1006. "A summary must of course be based on foundation testimony connecting it with the underlying evidence summarized ... and must be based upon and fairly represent competent evidence already before the jury...." *Fagiola v. Nat'l Gypsum Co. AC & S. Inc.*, 906 F.2d 53, 57 (2d Cir. 1990).

The Government seeks to introduce "two types of summary exhibits": (1) "summary charts that convey information evidencing phone contact (toll records) between specific individuals in connection to controlled purchases of firearms conducted in this case," and (2) "information pertaining to postal packages shipped and/or delivered on specific dates to/from locations." MIL re Charts at 3.

While Mr. Perez has not submitted a motion opposing this evidence, and the Government has provided the specific exhibits that it intends to introduce at trial which will form the basis of its summary charts, *see* MIL re Charts at 3 n.1, n.2, the Court will reserve judgment on the admissibility of this evidence until it may view the proposed summary charts at trial and after the Government has the opportunity to lay an evidentiary foundation for the admission of this evidence. *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) ("reserv[ing] judgment on the motion [*in limine*] until trial when admission of particular pieces of evidence is in an appropriate factual context"); *see also United States v. Johnson*, 469 F. Supp. 3d 193, 227 (S.D.N.Y. 2019) ("While the introduction of such summary charts may be proper, the Court cannot rule on the admissibility of summary charts and related witness testimony until the charts have been produced to the Court and defense counsel, and the nature of the underlying evidence has been made clear.")

Accordingly, the Government's motion to admit summary charts as substantive evidence, ECF No. 249, is denied without prejudice to renewal upon laying the appropriate foundation for this evidence's admission at trial.

## IV.    CONCLUSION

For the foregoing reasons, the [256] and [285] motions *in limine* are **GRANTED** in part and **DENIED** in part.

The [240], [249], [250], [257] motions *in limine* are **DENIED** without prejudice to renewal at trial.

The [246], motion *in limine* is **GRANTED**.

The [247] motion *in limine* is **DENIED** as moot.

To the extent the Government's [240], [246], [249], and [250] motions *in limine* refer to evidence relevant only to Brian Baker, they are **DENIED** as moot.

**SO ORDERED** at New Haven, Connecticut, this 31st day of March, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE